UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LISA BENNETT as Administratrix of the Estate of ANN HALL | : | |
| v. | : | C.A. No. 07-163-ML |
| KENT COUNTY MEMORIAL HOSPITAL MICHAEL QUAS, M.D. M. JAMES, R.N. JOHN AND JANE DOE, M.D., ALIAS; JOHN AND JANE DOE, R.N. ALIAS; JOHN DOE CORPORATION, ALIAS | : | |

## PLAINTIFF'S LR CV 16(C) STATEMENT OF CLAIMS

Pursuant to Fed. R. Civ. P. 16, LR Cv. 16(c), and the Court's Notice dated August 3, 2007, plaintiff hereby submits her statement of claims in advance of the initial scheduling conference scheduled for August 23, 2007.

### FACTS AND CLAIMS

At 2:30 in the afternoon of May 8, 2005, Ann Hall arrived by rescue at the emergency department at Kent County Memorial Hospital with complaints of shortness of breath, generalized weakness, vomiting, diarrhea, and possible seizures. M. James, RN—a hospital triage nurse—performed an initial assessment and documented diarrhea, headache, neck pain, and vomiting, but did not record possible seizure activity. Nurse James noted that Ms. Hall rated her pain as "11" on a scale of 1-to-10, but did not record its location.

More than two hours after Ms. Hall arrived at the emergency room, Michael Quas, M.D.—an emergency room physician—evaluated Ms. Hall and documented vomiting, diarrhea, headache since 4:00AM, and an episode of "fainting eyes rolled back into head, hands flexing." While he ordered and obtained laboratory tests, an echocardiogram, and a chest x-ray (all of which—with the exception of an elevated white blood cell count—were

within normal limits), Dr. Quas did not perform an appropriate medical screening examination to evaluate Ms. Hall's non-traumatic head pain, reported seizure activity, and episode of fainting.

Dr. Quas discharged Ms. Hall from the emergency department just after 7:00PM, with diagnoses of anxiety, fainting spell, and a viral syndrome. Dr. Quas instructed Ms. Hall to follow up with her regular physician. Four hours later, West Warwick EMS rushed Ms. Hall back to the hospital's emergency department after finding her rigid and unresponsive in bed, with difficulty breathing. A CT scan revealed a massive subarachnoid hemorrhage—or bleeding in the area between the brain and the thin tissues that cover it—with additional bleeding, obstruction, and compromise in other areas of Ms. Hall's brain.

Ms. Hall was transported with advanced cardio life support to Rhode Island Hospital for neurosurgical evaluation. Interventional radiology at Rhode Island hospital performed a cerebral angiogram with a "coiling" procedure to treat an aneurysm in Ms. Hall's brain. Notwithstanding this intervention, a physical examination and Doppler ultrasound indicated that Ms Hall was brain dead. On May 10, 2005, Ms. Hall was extubated, support was withdrawn, and she was pronounced dead at 2:15PM.

Claiming that her mother's injuries and death proximately resulted from the EMTALA violations and negligence by the hospital and its emergency room physician and triage nurse, Lisa Bennett, as administratrix of Ms. Hall's estate, brought the within action against the hospital, Dr. Quas, and Nurse James.

**ELEMENTS AND POSSIBLE LEGAL ISSUES**

As in any negligence action, plaintiff here will be required to prove elements of duty, breach, causation, and damage to prevail on her direct and indirect negligence claims against the hospital, Dr. Quas, and Nurse James. *See, e.g., Dunning v. Kerzner*, 910 F.2d 1009, 1013 (1st

Cir. 1990). It is well settled that this will ordinarily entail the introduction of expert testimony to establish that defendants' conduct has fallen short of applicable standards of medical care. *Id.,* 910 F.2d at 1014.

To establish violation of EMTALA, plaintiff here must show "that the hospital is a participating hospital covered by EMTALA that operates emergency department or equivalent treatment facility, that patient arrived at facility seeking treatment, and that hospital either did not afford patient appropriate screening in order to determine if she had emergency medical condition or bade farewell to patient, whether by turning her away, discharging her, or improvidently transferring her, without first stabilizing her emergency condition." *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1190 (1st Cir. 1995).

Other than discovery and evidentiary issues typically arising in the course of an EMTALA and medical negligence action, plaintiff does not anticipate unusual legal issues at this time.

Plaintiff,
By her Attorneys,

/s/ Michael T. Eskey

Amato A. DeLuca (#0531)
Miriam Weizenbaum (#5182)
Michael T. Eskey (#3035)
**DELUCA & WEIZENBAUM, LTD.**
199 North Main Street
Providence, RI 02903
(401) 453-1500
(401) 453-1501 Fax

**CERTIFICATION**

A true copy of the foregoing was served on all counsel of record listed below by regular mail on this 16th day of August 2007.

Michael G. Sarli, Esq.
Gidley, Sarli & Marusak
One Turks Head Place, Suite 900
Providence, RI 02903

/s/ Michael T. Eskey